## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JENNIFER CARLETON**<br>**Am Embassy Paris**<br>**PSC 116-Toulouse**<br>**APO, AE 09777** | ) ) ) ) ) | |
| **JOHN CARLETON**<br>**Am Embassy Paris**<br>**PSC 116-Toulouse**<br>**APO, AE 09777** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No.** _____ |
| **JOHN DIJOSEPH, ESQUIRE**<br>**2101 Wilson Blvd.**<br>**Suite 416**<br>**Arlington, VA 22201-3062** | ) ) ) ) ) | |
| **and** | ) ) | |
| **DAVID R. KAMINSKY, Esquire**<br>**14 Parkside Road**<br>**Silver Spring, MD 20910** | ) ) ) ) | |
| **and** | ) ) | |
| **TED KAVRUKOV**<br>**2009 N. 14th Street**<br>**Arlington, Virginia  22201** | ) ) ) ) | |
| **Defendants.** | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441 and 1446, Defendant Ted Kavrukov ("Kavrukov") hereby files his Notice of Removal of the Complaint filed against him by Jennifer Carleton and John Carleton ("Plaintiffs") in the District of Columbia Superior Court, and in support of this Notice of Removal, Defendant Kavrukov states the following:

1.    On or about May 14, 2007, Defendant Kavrukov received by personal service a Summons, Complaint, and Initial Order.    Copies of those documents are attached hereto collectively as Exhibit A.

2.    The exhibits attached as Exhibit A comprise all of the pleadings, process and orders served upon  Defendant Kavrukov in the District of Columbia action.

3.    In the Complaint, Plaintiffs allege a cause of action against the various Defendants for Legal Malpractice.

4.    According to Paragraph 2 of the Complaint, Plaintiffs are permanent residents of Washington, D.C., and currently stationed in Toulouse, France.    Defendant Kavrukov is a resident of Virginia.    Defendant John DiJoseph is alleged to be a resident of Virginia.[1] Defendant David R. Kaminsky is a resident of Maryland.    Plaintiffs and Defendants are therefore diverse.

5.    The amount in controversy exceeds $75,000.00.    Paragraph 25 of the Complaint alleges that the total damages sought are $238,588.59.

6.    This Court could have had original jurisdiction under 28 U.S.C. § 1332(a).

7.    Defendant David R. Kaminsky, who is not represented by the undersigned, was served with process in this matter and has expressly consented to removal of this action.

8.    Defendant John DiJoseph, who is not represented by the undersigned, was served with process in this matter and has expressly consented to removal of this action.

9.    A copy of this Notice of Removal is being filed on today's date in the D.C. Superior Court.

---

[1]    Upon information and belief Defendant John DiJoseph is a resident of Maryland, but this does not affect the basis for removal since the plaintiffs are residents of the District of Columbia and all Defendants are diverse.

10.    Defendant Kavrukov first received a copy of the Complaint on or about May 14, 2007. This notice is being filed prior to the expiration of thirty (30) days after that date.

## **CONCLUSION**

For the foregoing reasons, Defendant Kavrukov requests that this action be removed to this Court.

Dated: June 4, 2007                            Respectfully submitted,

                                               SANDS ANDERSON MARKS & MILLER
                                               A Professional Corporation

                                               George O. Peterson /s/
                                               _____

                                               George O. Peterson, Esq.      D.C. Bar No. 478050

                                               1497 Chain Bridge Road
                                               Suite 202
                                               McLean, Virginia 22101
                                               703-893-3600
                                               703-893-8484 (facsimile)
                                               *Counsel for Defendant Ted Kavrukov*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of June, 2007, a true and correct copy of the

foregoing Notice of Removal was served by first class mail, postage prepaid, upon:

> Christopher C.S. Manning, Esq.
> Manning & Sossamon
> 1532 Sixteenth Street, NW
> Washington, DC 20036
>
> Justin M. Flint, Esq.
> Aaron L. Handleman, Esq.
> Eccleston and Wolf
> 2001 S. Street, NW, Suite 310
> Washington, DC 20009
>
> John M. DiJoseph, Esq.
> 9610 Tiberias Drive
> Upper Marlboro, MD 20772

George O. Peterson /s/

George O. Peterson

A

SUPERIOR COURT CIVIL DIVISION FORMS                                                    PAGE G-15

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

JENNIFER AND JOHN CARLETON
_____
*Plaintiff*

VS.

TED KAVRUKOV, ESQ.
_____
*Defendant*

0003093-07

Civil Action No. [                    ]

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

CHRISTOPHER C.S. MANNING
Name of Plaintiff's Attorney

MANNING & SOSSAMON PLLC
Address

1532 16TH ST NW, WASHINGTON
DC, 20036    ||    202.387.2228
Telephone

By _____
Deputy Clerk

Date  5/3/07

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 93        **NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

Form 7

SUPERIOR COURT CIVIL DIVISION FORMS

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If **you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact** one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (**682-2700**) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

JENNIFER CARLETON
Vs.                                              C.A. No.      2007 CA 003093 M
JOHN DIJOSEPH

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge GEOFFREY M ALPRIN
Date:  May 3, 2007
Initial Conference: 9:00 am, Friday, August 03, 2007
Location:  Courtroom 320
             500 Indiana Avenue N.W.
             WASHINGTON, DC  20001

Caio.doc

### ADDENDUM TO INITIAL ORDER AFFECTING
### ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

**DISTRICT OF COLUMBIA SUPERIOR COURT**
**CIVIL DIVISION**

Jennifer Carleton )
AmEmbassy Paris )
PSC 116- Toulouse )
APO, AE 09777 )
) CA No.   0003093-07
John Carleton )
AmEmbassy Paris )
PSC 116- Toulouse )
APO, AE 09777 )
)
    Plaintiffs )
)
v. )
)
John DiJoseph, Esquire )
2101 Wilson Blvd )
Suite 416 )
Arlington, VA 22201-3062 )
)
David R. Kaminsky, Esquire )
14 Parkside Road )
Silver Spring, MD 20910 )
)
Ted Kavrukov, Esquire )
2009 N. 14th Street )
Arlington, VA 22201 )
)
    Defendants. )

RECEIVED
Civil Clerk's Office
MAY 0 3 2007
Superior Court of the
District of Columbia
Washington, D.C.

**COMPLAINT**

Plaintiffs by and through their undersigned attorney, Christopher C. S. Manning,

hereby sue the above-named Defendants and in support thereof state:

**JURISDICTION**

1.     This Court has jurisdiction pursuant to D.C. Code § 11-921 because the real

property that was the subject of the underlying litigation is located in

1

Washington, DC, many of the acts complained of occurred in Washington,

DC and all of Defendants are licensed to practice law in Washington, DC.

## PARTIES

2.    Plaintiffs are a married couple currently stationed by the Unites States State

Department in Toulouse, France. They permanently reside in Washington,

DC.

3.    Defendant David R. Kaminsky is an attorney licensed to practice law in

Washington, DC.

4.    Defendant Ted Kavrukov is an attorney licensed to practice law in

Washington, DC.

5.    Defendant John DiJoseph is an attorney licensed to practice law in

Washington, DC.

## FACTS

6.    Defendants represented Plaintiffs in the matter of Carleton, et al. v. Winter, et

al. C.A. 01-0006718 in the District of Columbia Superior Court.

7.    The matter involved a variety of claims brought in relation to an obviously

structurally defective wall in a home Plaintiffs purchased at 2150 L Street,

NW, Washington, DC 20036.

8.    In essence, the action alleged that Plaintiffs' real estate agent (Suzanne

Winter) inappropriately recommended a home inspector (Bob Phillips and

HTSI) about whom she knew very little which led to a grossly inaccurate

home inspection. The home inspection failed to disclose a structurally

defective brick wall which, immediately following the purchase of the home,

2

the Plaintiffs were forced to demolish and rebuild at a cost of $169,751.89.

The Plaintiffs also alleged that the sellers and the sellers' real estate agent

knew of the structural defect but failed to disclose its existence.

9.      The specific claims brought included: Fraudulent Misrepresentation (Winter,

seller's agent), Consumer Protection Act Violations (Winter, seller's agent),

Breach of Fiduciary Duty (Winter), Negligence (Phillips, HTSI).

10.      After all of the Plaintiffs' claims were disposed of on Summary Judgment

except for their Breach of Fiduciary duty claim against Winter, the case went

to trial in front of Judge Zoe Bush in the District of Columbia Superior Court.

11.      In the trial of this matter, Defendants proffered a home inspector, a Mr. J.D.

Grewell, to opine as to the standard of care of a real estate agent in

recommending a home inspector—a necessary element in the Plaintiffs'

Breach of Fiduciary Duty claim against Winter.

12.      At no time did Defendants retain or proffer an expert witness who was a real

estate agent to testify to this issue—despite Jennifer Carleton's repeated

suggestion that Defendants do so.

13.      At trial, Winter's counsel, Mr. Kevin Kane, moved for a Judgment as a Matter

of Law, arguing that the Plaintiffs could not establish a prima facie case for

their Breach of Fiduciary Duty claim because they did not have an appropriate

expert witness to opine as to a real estate agent's standard of care in

recommending a home inspector. As the attached trial transcript clearly

articulates (Exhibit A at pp78-83), the Court very definitively stated the

Plaintiffs' case would be dismissed due to Defendants' failure to designate

3

and proffer an appropriate expert witness to testify as to the standard of care for a real estate agent. Specifically, Judge Bush indicated that Defendants should have designated a real estate agent expert to testify.

14. As a result, despite the very meritorious nature of the Plaintiffs' claim, the case was dismissed in its entirety and judgment entered in favor of Suzanne Winter.

15. The Plaintiffs decided to attempt to salvage the over $61,262.13 in attorneys fees they had paid to pursue this matter by appealing Judge Bush's decision to the District of Columbia Court of Appeals.

16. The Plaintiffs were forced to make the very tenuous arguments that Judge Bush was in error because (a) J.D. Grewell was sufficiently qualified to testify as an expert witness on the issue of a real estate agent's standard of care, (b) no expert was needed because the standard of care for a real estate agent is statutorily established in the District of Columbia and (c) no expert was needed because the standard of care for a real estate agent was within the common knowledge of a lay juror.

17. As indicated in the attached opinion of the DC Court of Appeals (Exhibit B), the Court of Appeals summarily disposed of these arguments and forcefully opined that an expert witness who was a real estate agent should have been called by Defendants in order to establish the appropriate standard of care.

18. Therefore, due wholly to Defendants' neglecting to designate and call a real estate agent to testify as to the standard of care for a real estate agent in

4

recommending a home inspector, the Plaintiffs' claim against Suzanne Winter was forever extinguished.

19. As a result, the Plaintiffs had paid over $60,000 in legal fees but, due to Defendants negligence, had nothing to show for that expenditure.

20. The Plaintiffs were fortunate to have had one unrelated issue overturned on appeal—namely, whether a home inspector may contractually exculpate himself from gross negligence. That ruling allowed the Plaintiffs to continue to pursue their claim against the home inspector, Bob Phillips and HTSI, leading to a $10,000 settlement of the matter.

## COUNT I – LEGAL MALPRACTICE

21. Plaintiffs hereby incorporate paragraphs 1-20 into this Count.

22. In order to prove a case of legal malpractice, a Plaintiff must establish the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of.

23. In this case, Defendants were grossly negligent and breached their standard of care by neglecting to designate and call a real estate agent to testify as to the standard of care for a real estate agent in recommending a home inspector.

24. As a result of Defendants' gross negligence, the Plaintiffs' claim against Suzanne Winter was forever extinguished and Plaintiffs were denied their appropriate recovery.

25. As a result of Defendants' improper conduct, Plaintiff has suffered the following damages, *inter alia*:

- $169,751.89 in damages recoverable at trial.
- $61,262.13 in Defendants' attorneys fees.

5

- $17,574.57 in attorneys fees to prosecute Plaintiffs' appeal and subsequent claim against Bob Phillips and HTSI.

Subtracting the $10,000 the Plaintiffs received from Bob Phillips and HTSI in settlement, the Plaintiffs have been damaged by Defendants' legal malpractice in the amount of $238,588.59.

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. Rule that Defendants are liable for legal malpractice.

2. Order that Defendants pay Plaintiffs $238,588.59.

3. Award Plaintiffs their costs and expenses, including but not limited to, reasonable attorneys fees incurred as a result of Defendants' actions.

4. Award Plaintiffs punitive damages.

5. For such other and further relief the nature of this cause requires.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor, against Defendants, in the amounts to be determined at trial but not less than the amounts articulated above, plus costs and expenses, including but not limited to reasonable attorneys fees, statutory post-judgment interest, and for such other and further relied as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs request a jury trial of this matter.

Respectfully Submitted,

Christopher C. S. Manning
DC Bar # 471315
1532 Sixteenth Street, NW
Washington, DC 20036
(202) 387-2228
(202) 387-2229 (Fax)
cmanning@manning-sossamon.com
msossamon@manning-sossamon.com

7

# EXHIBIT A

1    standards of home inspectors in the District of Columbia

2    and elsewhere.

3            MR. KAVRUKOV:   Well, that's exactly what we

4    are talking about.

5            THE COURT:   Yes, now I have listened to the

6    opening statement of the parties and the Plaintiffs

7    opening indicated that he will offer testimony that --

8    let me see if I can find it.

9            (P A U S E)

10           THE   COURT:   The   proper   procedures   for

11   selecting an inspector and the standards for selecting

12   an inspector.

13           Now is it -- is it the Plaintiffs theory of

14   the case that if it turns out that the evidence

15   indicates that whatever the standard for selecting an

16   inspector weren't followed by Ms. Winter that that's

17   sufficient for the Plaintiff to meet his burden of proof

18   as to whether or not she breeched her fiduciary duty to

19   the Carletons?

20           MR. KAVRUKOV:   Well, it is part of it as one

21   of our witnesses already testified.   They relied on her,

22   she established a fiduciary relationship, they were

23   dependent on her.   That's what fiduciary relationship

24   is.

25           And what she did not -- what she did is to not

77

1    tell them that she knew nothing about this inspector and

2    that's the crux of the case.  She did not -- she -- she

3    recommend an inspector, she had nothing, no knowledge

4    about his qualifications.

5        She didn't know anything about him, she didn't

6    know how many houses he's inspected, or anything like

7    that.  And that's what it is.  That she did recommend

8    someone that she should not have.  And in order to

9    establish that that's what happened, we need somebody to

10   testify here what is the standard for selection of

11   inspectors.

12       So if you -- so if one is going to recommend

13   an inspector, then that one should know something about

14   the inspector and not just say oh, he's an inspector,

15   get him.

16       THE COURT:  I understand that.  But so the

17   witnesses that you have remaining are this housing

18   inspector who you believe you can qualify as an expert

19   in housing inspection issues and Mr. Carleton, is that

20   it?

21       MR. KAVRUKOV:  That's it.

22       THE COURT:  And how is it that you expect to

23   establish the standard of care for a real estate agent

24   in the District of Columbia?

25       MR. KAVRUKOV:  Well, we're not establishing

1   the real estate -- uh, the standard for real estate

2   brokers as such, we're establishing that a real estate

3   broker should know and should relate, or should know --

4   should make recommendation which relating to inspectors

5   which are such that the people -- the buyers in this

6   case would rely on, and she didn't do it.

7        THE COURT:   So you're not -- this is a

8   different theory than breech of fiduciary duty.  We now

9   have someone --

10       MR. KANE:   Your Honor, as a buyer's broker she

11  has --

12       THE COURT:   Excuse me, excuse me, I'm talking.

13  Your theory is now that she was negligent -- it's just

14  negligence and -- in recommending Mr. Phillips?

15       MR. KAVRUKOV:   She was -- she was their

16  broker, Your Honor.  And under that situation when she -

17  - when she's their broker she's supposed to look after

18  their interests which she did not by recommending Mr.

19  Phillips to them.  She broke this fiduciary duty that

20  she had with them as their exclusive real estate agent.

21       She was not working for anybody else, she was

22  working just for them.

23       THE COURT:   Mr. Kaminsky.

24       MR. KAMINSKY:   Your Honor, I don't think we're

25  trying to necessarily establish exactly what the

79

1  standard of care if, I think what we're asking the jury

2  to decide is that there is some standard above zero

3  which is exactly the level that she acted at in her

4  fiduciary capacity where she was obligated to reveal

5  what she knew, and what she knew here was that she knew

6  nothing about Mr. Phillips.

7        THE COURT:   No, standard of zero is not what

8  we're assuming here.   In order for you -- and correct me

9  if I'm wrong, the remaining count in this case is count

10  three in the complaint, Breech of Fiduciary Duty.

11        And   in   order   for   you   to   establish   the

12  Defendant has breeched her fiduciary duty you have to

13  establish the standard of care, gentlemen.

14        MR.   KAMINSKY:   Well,   Your   Honor,   I   think

15  previously -- and I can't quite remember where we

16  briefed that subject and I think we point out that it is

17  a case of first impression in the District of Columbia.

18        MR. KAVRUKOV:   No, well, may I ask something,

19  Your Honor, which I think --

20        THE COURT:   And just so we're clear on this.

21  One of you is going to have a seat because I'm not going

22  to have two people addressing on the same issue.

23        MR.L KAVRUKOV:   Okay, fine.   There is actually

24  in D.C. -- in the D.C. Code there is a standard that --

25  or the D.C. Code establishes what the duties of a broker

1   are.  And I can look through my papers and find out the
2   exact citation for that.  But what it establishes is
3   that she should inform her client of -- just about of
4   everything    possible,    including    she    has    the
5   responsibility of informing them about the inspectors
6   and other people which -- or anything that could happen
7   with a house that she knows or she didn't -- or she did
8   not know.
9            In  this  case  she  did  not  know  what  the
10  qualifications are.  So under the D.C. Code the D.C.
11  Code has already defined to what her duties are, and
12  there is no need for us to define the duties again
13  except that she has neglected or she did not avail
14  herself to what the D.C. Code states, mainly to inform -
15  - to inform her client of everything that is associated
16  with this house in a proper manner.
17            THE COURT:  Mr. Kane.
18            MR. KAVRUKOV:  I'm looking for it.
19            MR. KANE:  Your Honor, I have a case directly
20  on point for this issue.  It clearly states that the
21  expert testimony about the applicable standard of care
22  is required when an issue in dispute is beyond the
23  common knowledge and experience of the average lay
24  person.
25            Further it goes on, that without sufficient

1    proof of standard of care the case may not go to a jury.

2    They do not have one witness to establish the standard

3    of care necessary of a real estate agent in the District

4    of Columbia.   That's essentially -- the code provision

5    that he is referring to addresses things within her

6    field of actual knowledge.

7        THE COURT: And so you are making a --

8        MR. KANE: Well, essentially I am making a --

9    I guess it is a motion for -- a motion for uh -- motion

10   for judgment as a matter of law I believe is what it's

11   phrased now.   I mean at this point based upon the

12   witnesses that they have stated they are going to offer,

13   they cannot meet their burden.

14       MR. KAVRUKOV: Well, the uh -- I found the

15   section of the D.C. Code.   It's D.C. Code 47-2853.192

16   which titled Fiduciary Duties Broker Representing a

17   Buyer.

18       And it defines -- it codifies actually what

19   the buyers, brokers fiduciary duty is.

20       THE COURT: I do believe that at some point in

21   my many briefs that were submitted pre-trial in this

22   case that section was pointed out to the Court, and the

23   Court considered that very section in determining

24   whether or not to grant summary judgment with respect to

25   count three.

1          And the Court declined to grant summary
2     judgment with respect to count three leaving it to the
3     jury to determine whether or not under these
4     circumstances Ms. Winter had breeched the standard of
5     care or breeched her fiduciary duty as an agent to the
6     Plaintiffs.
7          However, that standard of care and her
8     responsibility to the Plaintiffs as a professional, as a
9     real estate agent, is beyond the kin of your average lay
10    person walking into this courtroom.
11         And having heard now what the remainder of the
12    evidence will be and the scope of the knowledge of the
13    expert to be proffered by the Plaintiffs, Ms. Winter
14    must be successful on her motion as a matter of law that
15    this is not a case based on the evidence viewing it in
16    the light most favorable to the Plaintiffs allowing all
17    reasonable inferences to the Plaintiffs favor.
18         There is no way the Plaintiff can go forward
19    without a witness to establish the standard of care, you
20    don't have it and I am granting his motion.
21         MR. KANE:  Thank you, Your Honor.
22         THE COURT:  We will call the jury back in and
23    tell them the case has been resolved, and you all can do
24    whatever you're going to do.
25         MR. KAVRUKOV:  Please note my objections to

# EXHIBIT B

Westlaw.

901 A.2d 174                                                           Page 1
901 A.2d 174
**(Cite as: 901 A.2d 174)**

**C**
Carleton v. WinterD.C.,2006.
District of Columbia Court of Appeals.
Jennifer CARLETON & John Carleton, Appellants,
v.
Suzanne WINTER, et al., Appellees.
No. 04-CV-768.

Argued Feb. 1, 2006.
Decided June 15, 2006.

**Background:** After back wall on their recently purchased home collapsed, home purchasers brought action against their real estate agent, agent's employer, home inspector, and home inspection company, alleging negligence by all defendants and breach of fiduciary duty by agent. The Superior Court, Zoe Bush, J., granted summary judgment in favor of home inspector and home inspection company and entered judgment as a matter of law in favor of agent and agent's employer. Purchasers appealed.

**Holdings:** The Court of Appeals, Kern, Senior Judge, held that:

(1) real estate agent's recommendation of home inspection company and home inspector to purchasers did not amount to a fraudulent misrepresentation;

(2) agent's recommendation did not violate the Consumer Protection Procedures Act (CCPA);

(3) purchasers needed to present expert testimony to establish the standard of care owed by real estate agent in the selection of home inspectors for their clients;

(4) purchasers' proffered expert was not qualified to testify on the standard of care owed by real estate agent; and

(5) exculpatory clause contained in form pre-inspection agreement could not exempt home inspector or home inspection company from liability for gross negligence.

Affirmed in part, vacated in part, and remanded.
West Headnotes

**[1] Federal Courts 170B ⟳1066**

170B Federal Courts
  170BXI Courts of District of Columbia
    170BXI(C) Appellate Jurisdiction and Procedure
      170Bk1066 k. Scope of Review. Most Cited Cases
Court of Appeals reviews de novo the trial court's rulings granting summary judgment and judgment as a matter of law.

**[2] Brokers 65 ⟳34**

65 Brokers
  65IV Duties and Liability to Principal
    65k34 k. Fraud of Broker or His Agent. Most Cited Cases
Real estate agent's recommendation of a home inspection company and home inspector to home purchasers, because she had used the inspector "a few times," he had done a "great job," and he was particularly suited for first-time home purchasers, did not amount to a fraudulent misrepresentation, even though agent never asked the home inspector for his resume or a synopsis of his qualifications; nothing indicated that these representations were false or that agent knew they were false, and agent's failure to ask for inspector's resume was not, by itself, a willful omission of a material fact.

**[3] Fraud 184 ⟳13(1)**

184 Fraud
  184I Deception Constituting Fraud, and Liability Therefor
    184k8 Fraudulent Representations
      184k13 Falsity and Knowledge Thereof
        184k13(1) k. Falsity of Representations. Most Cited Cases

**Fraud 184 ⟳13(2)**

184 Fraud
  184I Deception Constituting Fraud, and Liability Therefor
    184k8 Fraudulent Representations
      184k13 Falsity and Knowledge Thereof
        184k13(2) k. Knowledge of Defendant.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

901 A.2d 174
901 A.2d 174
**(Cite as: 901 A.2d 174)**

Page 2

Most Cited Cases
Fraudulent misrepresentation requires a false representation as well as knowledge of the falsity.

**[4] Antitrust and Trade Regulation 29T 🔗198**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regulations
         29Tk198 k. Real Property in General. Most Cited Cases
Real estate agent's recommendation of home inspection company and home inspector to home purchasers, because she had used the inspector "a few times," he had done a "great job," and he was particularly suited for first-time home purchasers, did not violate the Consumer Protection Procedures Act (CCPA); CPPA was intended to regulate the conduct of merchants or goods suppliers, and CPPA did not impose liability as a guarantor upon any private individual or his employer who recommended the goods or services of a particular merchant to another. D.C Official Code, 2001 Ed. § 28-3904.

**[5] Brokers 65 🔗38(4)**

65 Brokers
   65IV Duties and Liability to Principal
      65k38 Actions for Negligence or Wrongful Acts of Broker
         65k38(4) k. Evidence. Most Cited Cases
Home purchasers were required to present expert testimony to establish the standard of care owed by real estate agent in the selection of home inspectors for their clients, in order to establish that their real estate agent breached fiduciary duty in recommending home inspector who failed to detect faulty back wall of the home; lay person did not have common knowledge to determine the appropriate standard of care for a real estate agent under the circumstances, and statute governing fiduciary duties of real estate agents did not present a meaningful standard of care. D.C. Official Code, 2001 Ed. § 47-2853.192.

**[6] Negligence 272 🔗238**

272 Negligence
   272III Standard of Care
      272k238 k. Standard Established by Statute or Regulation. Most Cited Cases
If a statute merely repeats the common law duty of reasonable care, it is inappropriate as a substitute for the common law standard; only if it sufficiently sets forth specific guidelines to govern behavior may the court adopt it as the applicable standard.

**[7] Evidence 157 🔗538**

157 Evidence
   157XII Opinion Evidence
      157XII(C) Competency of Experts
         157k538 k. Due Care and Proper Conduct in General. Most Cited Cases
Home purchasers' proffered expert was not qualified to testify on the standard of care for real estate agents in the selection of home inspectors for their clients, in purchasers' action against real estate agent and her employer for allegedly breaching fiduciary duty by recommending a certain home inspector to purchasers, where the proffered expert had impressive experience as to the performance expected of a home inspector, but had no experience as to the ambit of fiduciary duties owed by a real estate agent to her client. Most Cited Cases

**[8] Contracts 95 🔗114**

95 Contracts
   95I Requisites and Validity
      95I(F) Legality of Object and of Consideration
         95k114 k. Exemption from Liability. Most Cited Cases
Exculpatory clause contained in the form pre-inspection agreement executed between home inspection company and home purchaser, limiting home inspection company's liability for negligence to the inspection fee paid by home purchaser, could not exempt home inspection company and home inspector from liability to home purchasers for any gross negligence in the performance of the inspection.

**[9] Husband and Wife 205 🔗25(1)**

205 Husband and Wife
   205I Mutual Rights, Duties, and Liabilities
      205k25 Agency of Husband for Wife
         205k25(1) k. In General. Most Cited Cases
A husband who executes a contract does not automatically establish a principal and agent relationship with his wife with regard to that contract, but it is possible to establish an implied agency relationship.

*176 Christopher C.S. Manning for appellants.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

901 A.2d 174
901 A.2d 174
**(Cite as: 901 A.2d 174)**

Page 3

Kevin I. Kane for appellees. George B. Huckabay, Bethesda, MD, filed a brief for appellees Home Tech Systems, Inc. and Robert Phillips.

Before FARRELL and KRAMER, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge:

This appeal is from the grant of summary judgment to appellees on various claims-including misrepresentation and negligence-brought against them arising from real estate or home inspection services they performed in connection with the appellants' purchase of a residence in Washington, D.C. We affirm the judgment as to appellee Winter, but vacate and remand for further proceedings with respect to appellees Home Tech Systems, Inc. and Robert Phillips (who conducted a home inspection of the property in question).

I.

Appellants John and Jennifer Carleton, government employees assigned to Washington, D.C., went house hunting for their child and themselves with a real estate agent, appellee Suzanne Winter. Appellants became interested in a four-story, six-bedroom house in the 2100 block of L Street, Northwest, which was conveniently located to their respective places of employment. Appellants recognized that the house, constructed in the early 1900s and poorly maintained, would require repairs and renovation, but they anticipated doing a good deal of this work themselves.[FN1] However, both they and their agent noted the sagging condition of the entire back wall of the house and the resultant slanting of this wall's windows, so as to give the windows what they described as a "cockeyed" appearance.

> FN1. Appellee Winter later recounted that appellant John Carleton told her that "he came from a family involved in construction."

Appellants, concerned about the condition of the back wall, but also concerned that the house might be bought by others, presented an offer to the house's owners, conditioned upon a favorable report by a professional home inspection company. Appellants requested that their real estate agent, appellee Winter, choose for them a competent home inspector. She advised that there were only three companies in the area that she could recommend, one of them being appellee Home Tech Systems, Inc. (HTSI), and its

employee, Robert Phillips. Winter had used Phillips in the past, and she described him as "great" and particularly suited for young people who *177 were first-time home buyers, such as the Carletons.

Shortly thereafter, appellant John Carleton and home inspector Phillips went through the house together for almost two hours. Appellant Jennifer Carleton later testified at trial that she received a call from her husband who was then in the house with Phillips. Phillips had explained to John Carleton that old houses "settle" over time, and that this was what had happened to this particular house. After Phillips gave this favorable report, the condition earlier put on appellants' offer to purchase was removed, and they bought the house. Appellants paid HTSI $430 for the home inspection services, pursuant to a printed form agreement which John Carleton and Phillips had signed.

The Carletons commenced certain renovations, intending to create within their four-story dwelling a unit for a tenant. They brought in a contracting company to commence the renovations, but upon arrival, the construction foreman told them they had a "serious defect in the rear wall." Also, an architect hired by appellants examined their house and advised that the wall was going to have to be replaced, and advised appellants to have a structural engineer examine it. Shortly thereafter, the entire back wall of the Carletons' house collapsed. The fallen wall had to be removed through a public alley behind their house, which was a laborious, and thus expensive, process and a new wall put in its place.[FN2] While this repair work was being carried out, appellants and their child had to live in a near-by apartment. They estimated they expended some $169,000 on repairs to make their house livable.

> FN2. Since their house fronted on L Street, which is heavily traveled, access to the house for 2 renovations could only come from the alley.

Appellants brought suit against appellees Phillips and HTSI, and also against appellee Winter and her employer, generally alleging negligence on the part of them all, as well as alleging that appellee Winter had breached the fiduciary duty which she had owed them as their real estate agent.

The trial court, after considerable pretrial discovery, made various rulings, all of them unfavorable to appellants. Thus, the court concluded that appellee

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

901 A.2d 174
901 A.2d 174
**(Cite as: 901 A.2d 174)**

Page 4

Winter's agency relationship with appellants did *not* fall within the ambit of the District of Columbia Consumer Protection Procedures Act (the CPPA), codified at D.C.Code § § 28-3901 through -3913 (2005), and that she had *not* made fraudulent misrepresentations to them by recommending Phillips.    The court also *rejected* appellants' contention that they did not need to present expert testimony to support their claim that Winter had breached her fiduciary duty to them as their agent by recommending Phillips to inspect the house before they purchased it.    Finally, after a jury had been assembled and appellant Jennifer Carleton had testified, the court concluded that the expert witness appellants presented to explain to the jury the responsibilities of a real estate agent lacked sufficient expertise, and therefore, could not testify. Accordingly, the court entered judgment as a matter of law in favor of Winter and her employer.

As to appellants' claims against Phillips and his employer, HTSI, the court entered an "Order Granting in Part, and Denying in Part, Defendants' Motion for Summary Judgment."    This terse ruling determined that there was a genuine dispute "as to whether the inspection was negligently performed," but then concluded, without explanation, that it was "clear that liability [of appellees HTSI and Phillips] is limited *178 to a refund of the $430.00 inspection fee pursuant to ... [the] signed agreement," and therefore that these appellees "may thus terminate involvement in this case by refunding the inspection fee." FN3

> FN3. The record reflects that appellee HTSI promptly tendered to appellants a check in the amount of $430.

II.

[1] With respect to the court's rulings granting summary judgment and judgment as a matter of law, we review those determinations *de novo*.    See *Columbia Plaza Tenants' Ass'n v. Columbia Plaza Ltd. P'ship,* 869 A.2d 329, 332 (D.C.2005) (summary judgment); *Brown v. Nat'l Acad. of Sciences,* 844 A.2d 1113, 1117-18 (D.C.2004) (judgment as a matter of law).

[2][3] We first address the trial court's rulings in favor of appellee Winter and her employer.    The court concluded, in reliance upon *Howard v. Riggs Nat'l Bank,* 432 A.2d 701 (D.C.1981), that "there is no fraudulent misrepresentation for a

recommendation by one professional to a third party to utilize the services of another professional." Here, Winter testified that she had recommended Phillips as the home inspector because she had used him "a few times" previously and he had done a "great job," and also because she liked "the way he explains the workings of the house, especially to young people who have never owned a house before."    As we pointed out in *Howard,* fraudulent misrepresentation requires, *inter alia,* a false representation as well as knowledge of the falsity.    *Id.* at 706.    There is nothing in the record to show either that these representations by Winter were false or that she knew they were false.FN4    Hence, we are not persuaded that the trial court erred in rejecting appellants' claim that Winter made a fraudulent misrepresentation to them. Moreover, we have noted on previous occasions that "a prophecy or prediction of something which it is merely hoped or expected will occur in the future is not actionable upon its nonoccurrence." *Id.* at 706 (quoting *Bennett v. Kiggins,* 377 A.2d 57, 61 (D.C.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978)).FN5

> FN4.  Winter acknowledged that she had never asked Phillips for his "resume" or a "synopsis of his qualifications," but this alone could not constitute a "willful omission of a *material* fact." *Id.* (emphasis added).

> FN5. Appellants' reliance on *Spargnapani v. Wright,* 110 A.2d 82, 84 (D.C.1954), is misplaced.    In that case, we held that, under certain circumstances, a plaintiff can make a case for fraud when the defendant sets forth a "pretense of knowledge when knowledge there is none." *Id* at 84.   However, no such pretense exists here because Winter's recommendation of Phillips was specifically grounded upon *her* knowledge that he *had* done "great" work for *her.*

[4] Our decision in *Howard v. Riggs Nat'l Bank* also disposes of appellants' contention that Winter's recommendation of Phillips to appellants violated CPPA § 28-3904(a)-(f).FN6    In *Howard,* a bank's employee told a customer of the bank that the customer would have to provide home construction plans to the bank before it could make a construction loan.    432 A.2d at 704.    The agent recommended a particular construction company to the customer,*179 and the company never performed the promised work.    *Id.* at 705.    This court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

concluded that the CPPA was intended to regulate the conduct of merchants or goods suppliers, and the bank did not fall into either category. *Id.* at 708-10. We specifically held that the CPPA does not "impose liability as a guarantor upon any private individual (or his employer) who recommends the goods or services of a particular merchant to another." *Id.* at 710. Thus, Winter's recommendation of Phillips because he had done good work for her in the past places neither her nor her employer within the ambit of the CPPA, and therefore the trial court's conclusion that the CPPA did not apply to the facts and circumstances of this case was correct.[FN7] *Id.* at 706; see also *Banks v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 634 A.2d 433, 437-39 (D.C.1993).

FN6. This section provides in pertinent part that "[i]t shall be a violation of this chapter ... for any person to: (a) represent that ... services have a source, sponsorship, [or] approval ... that they do not have; (b) represent that the person has ... approval, [or] status ... that the person does not have; ... (d) represent that ... services are of particular standard, [or] quality ... if in fact they are of another; (e) misrepresent as to a material fact which has a tendency to mislead; (f) fail to state a material fact if such failure tends to mislead...." D.C.Code § 28-3904.

FN7. We note that even if Winter did qualify as a "merchant," as the term is defined under CPPA's § 28-3901(a)(3) and interpreted in *Howard,* 432 A.2d at 709, she would not necessarily be liable under § 28-3904. Winter told appellants that Phillips' *past* work for her was "great," and no evidence in the record suggests that it was not "great." Her words also fall short to rise to the level of an express warranty; even if they did, the instant case does not involve a sale of goods. 3 WILLISTON, SALES § 17 (5th ed.1996).

[5] Appellants contend finally that appellee Winter, as appellants' real estate agent, is liable for the negligent failure of Phillips to detect the faulty back wall of their home because she breached her fiduciary duty to them by recommending him. Appellants claim that *no* expert testimony was necessary in this case because "it is within the common knowledge of a lay person to know that a realtor violates his/her standard of care when he/she recommends a house inspector without knowing anything about the inspector's credentials or background." [FN8] However, the record does not support such contention. Rather, it reflects that Winter knew about the past work of Phillips for her, and hence told appellants that he had done a "great" job for her in the past and that he was particularly suited for working with first time home buyers. Moreover, we are not persuaded that a lay person has "common knowledge" to determine the appropriate standard of care for a realtor under the circumstances here. Real estate agents owe manifold duties to persons they represent; whether and to what extent those duties include "vouching" for careful performance by a home inspector they recommend are questions on which only the standards of the profession-as articulated by an expert-can enlighten a jury. See *District of Columbia v. Hampton,* 666 A.2d 30, 35 (D.C.1995), and cases cited therein.

FN8. Appellants seize upon a comment by appellee Winter that she had never asked for his resume or inquired of his educational background. Presumably, her own previous positive experiences with his work obviated the necessity for her to ask about his background.

[6] Alternatively, appellants claim that no expert testimony was necessary at the trial because D.C.Code § 47-2853.192(a)(2)(C) [FN9] and (a)(4) [FN10] are "detailed in expressing the realtor's obligations but also flexible enough to apply to a wide range of circumstances." However, it is established that if a statute "merely repeat[s] the common law duty of reasonable*180 care," it is inappropriate as a substitute for the common law standard. *McNeil Pharm. v. Hawkins,* 686 A.2d 567, 579 (D.C.1996). Only if it sufficiently "set[s] forth 'specific guidelines to govern behavior' " may the court adopt it as the applicable standard. *Id.* (quoting *Joy v. Bell Helicopter Textron, Inc.,* 303 U.S.App. D.C. 1, 10, 999 F.2d 549, 558 (1993)). There were no such specific guidelines here.

FN9. "A licensee engaged by a buyer shall ... promote the interests of the buyer by ... disclosing to the buyer material facts related to the property or concerning the transaction of which the licensee has actual knowledge...." D.C.Code § 47-2853.192(a)(2)(C).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

901 A.2d 174
901 A.2d 174
(Cite as: 901 A.2d 174)

FN10. "A licensee engaged by a buyer shall ... exercise ordinary care...." D.C.Code § 47-2853.192(a)(4).

Appellants further argue that "Winter *recklessly* recommended a house inspector to examine a very serious structural defect without knowing ... anything about the inspector's credentials and background.... Therefore ... the standard of care for a realtor acting as a fiduciary is *statutorily established* and no expert was needed to provide the standard of care at trial." (Emphases added.) However, the record does not support appellants' argument. While Winter testified that she had not examined Phillips's "credentials and background," she did testify that her recommendation of him was based on her own experience with him, and it is undisputed that she was aware of no negative information about his past work or reputation. Accordingly, we are not persuaded that § 47-2853.192 presented a meaningful standard of care. *Thoma v. Kettler Bros., Inc.*, 632 A.2d 725, 728-29 n. 8 (D.C.1993); *District of Columbia v. Mitchell*, 533 A.2d 629, 639 (D.C.1987); *Lewis v. Washington Metro. Area Transit Auth.*, 463 A.2d 666, 674 (D.C.1983).

[7] Finally, appellants contend that, even if expert testimony was required to establish the proper standard of care for realtors in the selection of home inspectors for their clients, the witness they proffered at trial had the expertise to testify concerning that standard. The record reflects that when trial commenced, appellants' counsel announced that he would call one expert witness, J.D. Grewell, whom he described in his opening statement as "an expert on inspections." Subsequently, there was an objection to his giving testimony because Grewell did not qualify as an expert on the duties of a realtor acting as an agent for her clients. Rather, counsel for appellants asserted that the proffered witness was qualified only to testify concerning the proper procedures for a home inspector to follow in carrying out his responsibility to those who hire him. The trial court concluded that the "standard of care and [Winter's] responsibility to the [appellants] as ... a real estate agent, is beyond the ken of your average lay person walking into this courtroom." The court further concluded that "there is no way [appellants] can go forward without a witness to establish the standard of care" and that this witness lacked the appropriate qualifications to testify as an expert on the duties of a realtor to its client. Accordingly, the court granted judgment as a matter of law in favor of appellees on their claim against Winter and her

employer.

We are unable to conclude upon this record that the trial court abused its discretion by excluding the testimony of the expert witness whom appellants proffered. The witness Grewell described himself as a Professional Home Inspector since 1972, and listed himself as an "active member of the American Society of Home Inspectors," having been a Senior Member of that organization since 1979. While Grewell appeared to have impressive experience as to the performance expected of a home inspector, he had no experience as to the ambit of fiduciary duties owed by a real estate agent to her client in the particular area of selecting a home inspector at the request of the client. *See Haidak v. Corso*, 841 A.2d 316, 322 (D.C.2004) (expert witness must have sufficient skill, knowledge, or experience in the *relevant \*181 field* so that his testimony will probably aid finder of fact). Accordingly, we are unable to conclude that the trial court erred in granting judgment in favor of appellees Winter and her employer.

### III.

[8] We turn now to the trial court's two-fold determination of appellants' action against HTSI and its employee, Phillips. On the one hand, the court determined that there was indeed a genuine issue of material dispute between appellants and appellees over whether Phillips' inspection of appellants' house had been "negligently performed." But on the other hand, the court also concluded that appellees "may ... terminate involvement in this case by refunding the inspection fee" received from appellants, because the form Pre-Inspection Agreement appellant John Carleton executed with HTSI provided that if HTSI was "found liable due to ... negligence ... then the liability ... shall be limited to a sum equal to the amount of the fee paid by the customer for the inspection and report."

The trial court gave no further explanation of its ruling. We presume that the trial court concluded that the exculpatory clause barred the appellants from recovering full damages on their claim. We conclude, however, that the law is not so clear on that issue. While the law in this jurisdiction is not extensive on the issue of enforcing exculpatory clauses, in *Houston v. Security Storage Co.*, 474 A.2d 143, 144 (D.C.1984), addressing an exculpatory clause in the context of a bailment, we wrote: "It is well settled in this jurisdiction that a provision in a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

bailment contract limiting the bailee's liability will be upheld in the absence of gross negligence, willful act, or fraud."    Indeed, an examination of leading authorities in the contract area and of cases in other jurisdictions reveals that courts have not generally enforced exculpatory clauses to the extent that they limited a party's liability for gross negligence, recklessness or intentional torts.

The Restatement (Second) of Torts § 496B, cmt d (1963, 1964), explains:    "[G]eneral clauses exempting the defendant from all liability for loss or damage will not be construed to include loss or damage resulting from his intentional, negligent, or reckless misconduct, unless the circumstances clearly indicate that such was the plaintiff's understanding and intention."    Similarly, Corbin on Contracts § 85.15, 455 (2003), states:    "Courts do not enforce agreements to exempt parties from tort liability if the liability results from that party's own gross negligence, recklessness, or intentional conduct." Likewise, Williston on Contracts § 19.23, vol. 8, 291-97 (4th ed.1998), reads:    "An attempted exemption from liability for a future intentional tort or crime or a future willful or grossly negligent act is generally held void...." Prosser and Keaton on Torts § 68, 483-84 (5th ed.1984), further clarifies: "[O]n the basis either of common experience as to what is intended, or of public policy to discourage aggravated wrongs, such agreements [to limit liability] generally are not construed to cover the more extreme forms of negligence, described as willful, wanton, reckless or gross, or to any conduct which constitutes an intentional tort."

These treatises are based upon the case law from a wide range of jurisdictions, and in turn, many courts have adopted the reasoning of these treatises.    See, e.g., _Farina v. Mt. Bachelor, Inc.,_ 66 F.3d 233, 235 (9th Cir.1995) ("The clause exculpates [the appellee] from liability for more than ordinary negligence, including gross negligence and wanton or willful misconduct.    This attempt to escape liability for more than ordinary negligence renders the release**182** clause invalid"); _Hanks v. Powder Ridge Rest. Corp.,_ 276 Conn. 314, 885 A.2d 734, 747-48 (2005) ("[M]any states uphold exculpatory agreements in the context of simple negligence, but refuse to enforce such agreements in the context of gross negligence.    Connecticut does not recognize degrees of negligence and, consequently, does not recognize the tort of gross negligence as a separate basis of liability"). See also _Murphy v. N. Am. River Runners,_ 186 W.Va. 310, 412 S.E.2d 504, 510 (1991).

Asserting an absence of authority in this jurisdiction with respect to the enforceability of a limitation of liability clause in a home inspection contract, appellees HTSI and Phillips urge the court to look to Maryland, and specifically cite to _Baker v. Roy H. Haas Assocs.,_ 97 Md.App. 371, 629 A.2d 1317 (Md.1993).    In that case, the Maryland Court of Appeals upheld a limitation of liability clause in a contract similar to the clause here limiting the home inspection company's liability to a refund of the $250 inspection fee.    See also _Maiatico v. Hot Shoppes, Inc.,_ 109 U.S.App. D.C. 310, 312, 287 F.2d 349, 351 (1961).    What HTSI overlooks, however, is the _Baker_ court's conclusion that such a limitation is not effective to limit liability if the conduct of the party whose liability has been contractually limited has been grossly negligent or worse.    629 A.2d at 1321 (citing _Winterstein v. Wilcom,_ 16 Md.App. 130, 293 A.2d 821, 824 (Md.1972)).    See also _Adloo v. H.T. Brown Real Estate, Inc.,_ 344 Md. 254, 686 A.2d 298, 301 (1996) (recognizing that exculpatory clauses will not be enforced "when a party to the contract attempts to avoid liability for intentional conduct of harm caused by reckless, wanton, or gross behavior").

The trial court acknowledged in its brief ruling that there was a genuine dispute between the parties as to whether Phillips' inspection had been negligent. Testimony before the trial court established that two other witnesses, a contractor and an architect who had some expertise on house building, looked at the back wall of the Carletons' house and immediately expressed concern about its stability.    Thus, on remand the trial court must consider whether there are triable issues of fact with respect to whether Phillips' assessment that the wall had merely "settled" was not just simple negligence, but rather gross negligence.

Accordingly, given the possibility that the negligence amounted to not ordinary negligence but gross negligence, the judgment of the trial court in favor of appellee HTSI and appellee Phillips must be vacated and this case is remanded to the trial court for further proceedings consistent with this opinion.[FN11]    The judgment of the trial court in favor of appellee Winter and her employer is affirmed.

> FN11. While appellants' complaint did not specifically allege _gross_ negligence on the part of appellees Phillips and HTSI, "[t]he label on the request for relief is not

901 A.2d 174
901 A.2d 174
**(Cite as: 901 A.2d 174)**

determinative." *Farmer v. Farmer, 526 A.2d 1365, 1369 (D.C.1987).* The remand will constitute "no procedural unfairness" to appellees, because the trial court had noted a material dispute as to whether they had negligently performed the home inspection. *In re Walker, 856 A.2d 579, 586 (D.C.2004).* Thus, on remand, they will have "an opportunity to make an appropriate factual and legal presentation with respect" to a claim of gross negligence. *Id.*

[9] *So ordered.*[FN12]

> FN12. On remand, the trial court also will have the opportunity to address and decide whether appellant John Carleton's signature *alone* was sufficient to bind his wife *also* to the terms of the pre-inspection agreement. *See Lewis, supra, 463 A.2d at 673.* A husband who executes a contract does not *automatically* establish a principal and agent relationship with his wife with regard to that contract, but it is of course possible to establish an implied agency relationship. *Chesser v. Troiano, 61 A.2d 629, 632 (D.C.1948).*

D.C.,2006.
Carleton v. Winter
901 A.2d 174

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jennifer Carleton, John Carleton | John DiJoseph, David R. Kaminski, Ted Kavrukov |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Washington, DC<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)   Arlington, VA<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Christopher C. S. Manning, Esquire<br>1532 Sixteenth Street, NW<br>Suite 301<br>Washington, DC 20009 | George O. Peterson, Esquire<br>1497 Chain Bridge Road<br>Suite 202<br>McLean, VA 22101 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ● 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ● 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**
- ☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**   **OR**   ○ **F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
○ 1 Original Proceeding   ◉ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
28 U.S.C. 1332

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 238,588.59   Check YES only if demanded in compl   JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☐   If yes, please complete related case form.

DATE   June 4 ,2007      SIGNATURE OF ATTORNEY OF RECORD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **JENNIFER AND JOHN CARLETON,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **2007 CA 003093** |
| **v.** ) | **Judge Alprin** |
| ) | **Next Event:  Initial Conference 08/03/07** |
| **JOHN DIJOESPH,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Ted Kavrukov has filed a Notice of Removal in

the United States District Court for the District of Columbia and that, pursuant to 28 U.S.C. §

1441(a), no further proceeding may be held in this Court unless and until the case is remanded.

A copy of the Notice of Removal filed in the federal court (without the exhibits thereto) is

attached hereto as Exhibit A.

Dated: June 4, 2007                    Respectfully submitted,

                                       SANDS ANDERSON MARKS & MILLER
                                       A Professional Corporation


                                       George O. Peterson /s/
                                       _____
                                       George O. Peterson, Esq.      D.C. Bar No. 478050

                                       1497 Chain Bridge Road
                                       Suite 202
                                       McLean, Virginia 22101
                                       703-893-3600
                                       703-893-8484 (facsimile)
                                       *Counsel for Defendant Ted Kavrukov*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Removal was served through the Court's electronic filing and service system this 4th day of June, 2007, to the following:

> Christopher C.S. Manning, Esq.
> Manning & Sossamon
> 1532 Sixteenth Street, NW
> Washington, DC 20036
>
> Justin M. Flint, Esq.
> Aaron L. Handleman, Esq.
> Eccleston and Wolf
> 2001 S. Street, NW, Suite 310
> Washington, DC 20009

And by first class mail, postage prepaid, upon:

> John M. DiJoseph, Esq.
> 9610 Tiberias Drive
> Upper Marlboro, MD 20772

George O. Peterson /s/
_____
George O. Peterson

2